UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
NATIONAL CONSUMERS LEAGUE,                  )
on behalf of the general public,            )
                                            )
        Plaintiff,                          )
                                            )
        v.                                  )   Civil Action No. 13-1725 (ESH)
                                            )
FLOWERS BAKERIES, LLC.                      )
                                            )
        Defendant.                          )
_____ )

**MEMORANDUM OPINION**

On September 28, 2013, the National Consumers League ("NCL") filed suit on behalf of the "general public" in D.C. Superior Court against Flowers Bakeries, LLC ("Flowers"), alleging violations of the D.C. Consumer Protection Procedures Act ("DCCPPA"). D.C. Code § 28-3901, *et seq.* After defendant removed the case to federal court on the basis of diversity jurisdiction and the Class Action Fairness Act ("CAFA") (Notice of Removal ("Notice"), Oct. 31, 2013 [ECF No. 1]), plaintiff filed the present motion for remand on the grounds that this Court lacks subject matter jurisdiction. (Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction ("Mot."), Dec. 4, 2013 [ECF No. 8].) For the reasons stated below, this motion will be granted.

**FACTUAL BACKGROUND**

Plaintiff is a non-profit organization headquartered in Washington, D.C. (Compl., Sept. 28, 2013 [ECF No. 1-1], at ¶ 34.) Defendant is a manufacturer of food products based in

Georgia.[1] (*See* Flowers Bakeries, LLC's Resp. to Court Order ("Flowers Resp."), Feb. 19, 2014 [ECF No. 17], at ¶ 2.) In its complaint, plaintiff, acting as a private attorney general, alleges that the defendant engaged in a "pervasive pattern of fraudulent, deceptive, and otherwise improper marketing practices . . . regarding the sale of Nature's Own Honey Wheat Bread and Whitewheat Bread" in violation of the DCCPPA. (Compl. at ¶ 1.) Based on those allegations, plaintiff demands (a) a declaration that "Defendant's conduct is in violation of the [DCCPPA]," (b) an injunction "ordering corrective advertising or revised labeling," (c) relief for the "Plaintiff and the General Public of the District of Columbia [in the form of] restitution, treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater," and (d) "costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest." (*Id.* at Prayer for Relief.)

On October 31, 2013, defendant removed the case to federal court. In its Notice of Removal defendant identified three independent grounds for removal: (1) diversity jurisdiction, (2) the class action provision of CAFA, and (3) the mass action provision of CAFA. (*See* Not. at 1-2.) Along with this Notice of Removal, defendant submitted a sworn declaration from Daniel J. Scott, the President of Flowers Baking Co. of Oxford, LLC. (Decl. of Daniel J. Scott, Oct. 30, 2013 [ECF No. 1-4].) Flowers Oxford is a wholly-owned subsidiary of defendant Flowers and is the exclusive provider of the relevant bread products to retailers in the District of Columbia. (*Id.* at ¶¶ 1, 4.) In this declaration, Mr. Scott stated that more than 300,000 loaves of the breads had been sold in the District of Columbia since January 2011 and that at least one consumer had

---

[1] "Flowers Food, Inc., a publicly traded corporation is the sole member of Flowers Bakeries, LLC. Flowers Foods, Inc. is a citizen of the state of Georgia, as it is both incorporated in and has its principal place of business in Georgia." (Flowers Resp. at ¶ 2.)

purchased more than 50 loaves from locations in the District of Columbia since September 5, 2012. (*Id.* at ¶¶ 5-6.)

On December 4, 2013, plaintiff filed a motion for remand. (Mot. at 1.) On December 23, 2013, defendant filed an opposition to this motion. (Def. Flowers Bakeries, LLC's Mem. of Law in Opp. to Pl.'s Mot. to Remand ("Opp."), Dec. 23, 2013 [ECF No. 9].) With this opposition, defendant's counsel filed an affidavit stating that on November 9, 2013, she received a settlement demand for an amount exceeding $75,000, as well as several substantive concessions.[2] (Decl. of Cheryl A. Falvey, Dec. 23, 2013 [ECF No. 9-1].) On January 9, 2014, plaintiff filed a Reply, including a request for fees and costs pursuant to 28 U.S.C. 1447(c) (Pl.'s Reply Brief in Support of its Mot. to Remand for Lack of Subject Matter Jurisdiction ("Reply"), Jan. 9, 2014 [ECF No. 12]), which it later withdrew. (*See* Notice of Withdrawal of Req. for Costs and Fees and Associated Legal Arg., Jan. 21, 2014 [ECF No. 14].)

## ANALYSIS

### I. STANDARD OF REVIEW

A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court. 28 U.S.C. § 1441(a). Upon a motion to remand a removed case to state court, the party opposing the motion "bears the burden of establishing that subject matter jurisdiction exists in federal court." *RWN Dev. Grp., LLC v. Travelers Indem. Co.*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008) (quoting *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West,* 366 F. Supp. 2d 33, 36 (D.D.C. 2005)). Courts are to construe the removal statute narrowly in order to avoid federalism concerns, *Shamrock Oil &*

---

[2] In response to this Court's Order of February 14, 2014, defendant provided the Court a copy of this settlement letter for *in camera* review. This review confirmed that plaintiff's monetary demand was for more than $75,000.

*Gas Corp. v. Sheets,* 313 U.S. 100, 108 (1941), and any doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand. *Hood v. F. Hoffman–La Roche, Ltd.,* 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (citing *Gasch v. Hartford Accident & Indem. Co.,* 491 F.3d 278, 281-82 (5th Cir. 2007)).

## II. TIMELINESS

Before reaching the merits of plaintiff's arguments for remand, the Court must address defendant's contention that remand should be denied on the grounds that it was not timely filed. (Opp. at 10.) Under the federal removal statute, 28 U.S.C. § 1447(c), "a motion to remand on the basis of any defect other than lack of subject matter jurisdiction must be made within thirty days after the filing of the notice of removal. . . ." Plaintiff filed its motion to remand thirty-four days after the case was removed, which according to defendant, does not raise a defect in the Court's subject matter jurisdiction, but rather alleges procedural defects in defendant's Notice of Removal, and therefore should be denied.

Defendant is correct that "courts have distinguished between an argument that diversity jurisdiction actually does exist (*i.e.*, because diversity of citizenship does not exist or the amount in controversy is too low) and an argument that the removing party failed to demonstrate those facts to a reasonable probability." (*Id.* (citing *Harmon v. Oki Sys. & Crown Equip. Corp.*, 115 F.3d 477, 478 (7th Cir. 1997)).) Yet, this legal principal is of little help to defendant. Plaintiff's motion does not challenge this Court's jurisdiction based on a failure to provide sufficient facts in the Notice of Removal to establish the necessary amount in controversy. To the contrary, plaintiff's motion to remand argues that based on the facts contained in the Notice of Removal, defendant has failed to establish that the amount in controversy exceeds the statutory minimum as a matter of law. Because the Court concludes that plaintiff's motion does not allege

4

procedural defects in the Notice of Removal, but instead it presents a *bona fide* challenge to this Court's subject matter jurisdiction, defendant's arguments for denial on timeliness grounds is rejected.

## III.   DIVERSITY JURISDICTION

A federal court has diversity jurisdiction when (1) there is complete diversity of citizenship among the parties (that is, no plaintiff is a citizen of the same state as any defendant) and (2) the "amount in controversy" is greater than $75,000. *See* 28 U.S.C. § 1332(a). When calculating the amount in controversy for purposes of this statute, it is well-established that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris,* 394 U.S. 332, 335 (1969); *Georgiades v. Martin–Trigona,* 729 F.2d 831, 833 (D.C. Cir. 1984) ("Separate and distinct claims, regardless of whether they share a community of interest or originate in a single transaction or event, may not be aggregated to satisfy the jurisdictional amount-in-controversy requirement"). The so-called "non-aggregation principle [is] derived from the statutory phrase matter in controversy. Hence, the doctrine still applies when separate and distinct claims are asserted on behalf of a number of individuals, regardless of whether an action involves a simple joinder of multiple plaintiffs, [or is] a representative action . . . ." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103-04 (D.D.C. 2008) (internal citations and quotation marks omitted).

Based on the representations of the parties the Court is satisfied that there is complete diversity of citizenship. Plaintiff is a citizen of Washington, D.C. (Compl. at ¶ 34.) Defendant is a citizen of Georgia. (*See* Flowers Resp. at ¶ 2.) Where there is disagreement, however, is whether defendant has established that the amount in controversy exceeds $75,000. Defendant identifies three independent bases in support of its argument that it has cleared the jurisdictional

threshold. First, defendant argues that because more than 300,000 loaves of the subject products were sold to consumers in D.C. and each violation carries with it a minimum statutory penalty of $1,500 per product under the DCCPPA, the total potential damages would easily eclipse $75,000. Second, defendant argues that because there is at least one retailer who bought over fifty loaves, the amount in controversy requirement is met. Third, defendant relies on plaintiff's settlement demand for an amount in excess of $75,000 to satisfy the amount in controversy requirement.

As explained below, the Court is not persuaded by these arguments. This type of case is often referred to as a private attorney general suit brought to enforce the rights of the general public. While the D.C. Circuit has yet to address the question of how to calculate the amount in controversy for purposes of determining diversity in such suits, this Court is guided by the principal that the removal statute should be construed narrowly in favor of remand and that separate and distinct claims should not be aggregated. On these bases, the Court concludes that the jurisdictional amount in controversy has not been satisfied.

### A. Defendant's Aggregate Damages Theory

In its Notice of Removal, defendant argues that "[p]laintiff alleges a minimum of $1,500 in statutory damages for each alleged violation of the [DC]CPPA . . . [and] more than 300,000 units of the Subject Products were sold within the District of Columbia . . . [resulting in the potential for] hundreds of millions of dollars [in statutory damages]." (*See* Not. at 4.) In so arguing, defendant contends that because its total potential liability far exceeds the statutory threshold of $75,000, it has satisfied the amount in controversy requirement for purposes of establishing diversity jurisdiction. Calculating the amount in controversy in this way, however, runs afoul of the non-aggregation principal that "[t]he separate and distinct claims of two or

6

more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement" except "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335. Applying this standard to private attorney general actions, courts within this district have unanimously concluded that so long as individual consumers are eligible to recover individual damages, the consumers do not have a "common and undivided interest" that may be aggregated under the non-aggregation principal announced in *Snyder*.[3] *See Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 139-40 (D.D.C. 2010) ("Here, [plaintiff's] claim for damages is not a common, undivided claim. To the contrary, CPPA provides that damages in a private attorney general action are 'payable to the consumer.' D.C. Code § 28–3905(k)(1)(A). Accordingly, aggregation is not proper."); *Breakman*, 545 F. Supp. 2d at 104; *Reigner v. Ingersoll-Rand Co.,* 461 F. Supp. 2d 1, 3 (D.D.C. 2004) ("[T]his [private attorney general] suit seeks damages for individual consumers, not disgorgement. It does not seek to establish a joint or common right in a common fund.") For these reasons, defendant cannot aggregate the claims of the individual customers in order to establish that the requisite amount in controversy.

### B. The Individual Consumer Entitled to More than $75,000 in Damages

Next, defendant argues that because at least one consumer purchased more than fifty loaves, it has satisfied the amount in controversy requirement.[4] (*See* Opp. at 8 ("With this

---

[3] Courts within this district have drawn a distinction between claims for *damages* and claims for *disgorgement*. The former, as here, is payable to individual consumers and therefore may not be aggregated. The latter is taken directly from defendant to a common fund and is therefore considered a "common and undivided interest." *See Mostofi v. Network Capital Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011)("[C]ase law in this district suggests that CPPA claims seeking the disgorgement of funds *can* be aggregated to satisfy the amount-in-controversy requirement."); *Williams v. Purdue Pharma Co.*, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003) (same).

[4] The mathematical basis for this claim is that an individual consumer that purchased at least fifty-one

information [from the declaration of Mr. Scott], Flowers has provided data sufficient for this Court to conclude . . . that enough alleged statutory violations occurred such that . . . . the $75,000 amount in controversy threshold [was reached].").) Yet, this argument is also unconvincing.

While defendant is correct that the Court may aggregate the damages to which a single individual would be entitled when calculating the amount in controversy, this consumer must also be a party to the lawsuit in order for the Court to have diversity jurisdiction. As Judge Bates explained in *Zuckman v. Monster Beverage Corp.*, another DCCPPA case, "only the damages to which [the plaintiff] *would be personally entitled*—rather than those on behalf of the public— will count toward satisfying the $75,000 jurisdictional threshold." 958 F. Supp. 2d 293, 297-98 (D.D.C. 2013) (emphasis added); *see also Breakman*, 545 F. Supp. 2d at 104 ("[B]ecause a "private attorney general action is a collection of 'separate and distinct' claims . . . *each plaintiff's* claim must exceed the jurisdictional amount for this Court's subject matter jurisdiction to be invoked.") (citing *Boston Reed Co. v. Pitney Bowes, Inc.*, 2002 WL 1379993, at *5 (N.D. Cal. June 20, 2002)) (emphasis added); *cf. Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S.Ct. 736, 744 (Jan. 14, 2014) (holding that the term plaintiff should be interpreted "in accordance with its usual meaning—to refer to the actual named parties who bring an action . . . ."). Defendant therefore may not establish the requisite amount in controversy by demonstrating that if plaintiff were successful, some non-party would be entitled to more than $75,000 in damages.

---

loaves of bread would be entitled to more than $75,000 in damages if plaintiff prevailed (51 loaves multiplied by a $1,500 minimum statutory penalty per loaf equals $76,500 in damages).

## C. The Settlement Demand Letter

Defendant's final argument regarding the amount in controversy is based on the settlement demand letter sent to it by the plaintiff on November 9, 2013. (Opp. at 9-10.) In this letter, plaintiff agreed to settle the case for a payment of an amount greater than $75,000, as well as several substantive concessions. Based on this demand, defendant argues that "NCL has demonstrated that it values the litigation at an amount greater than $75,000 . . . [and] this Court is entitled to use that information to determine that the amount in controversy exceeds $75,000, and jurisdiction is appropriate." (*Id.* at 10.) Plaintiff argues in response that the Court may not consider the details of a settlement demand because Fed. R. Evid. 408 prohibits the use of a settlement offer to "prove or disprove the validity or amount of a disputed claim." That said, as plaintiff concedes, several federal courts of appeal have expressly permitted the use of such evidence for the purpose of establishing the amount in controversy. Yet, "[p]laintiff believes the D.C. Circuit would reach a contrary result. . . ." (Reply at 10.)

Whether the D.C. Circuit would choose to depart from the well-reasoned conclusions of other circuit courts that have held that settlement demands may be used as evidence in calculating the amount in controversy need not be decided.[5] Even if the settlement demand is considered, it does not provide sufficient evidence that the amount in controversy exceeds $75,000. "A plaintiff's proposed settlement amount 'is [only] *relevant evidence* of the amount in

---

[5] *See, e.g.*, *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012) ("Although settlement negotiations are not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability for or invalidity of the claim or its amount, they can be considered 'to show the stakes' when determining whether the amount in controversy is met.") (quoting *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 & n.3 (9th Cir. 2002); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1097 (11th Cir. 1994) ("[W]hile [a] settlement offer, by itself, may not be determinative, it counts for something."). *But see King v. Wal-Mart Stores, Inc.*, 940 F. Supp. 213, 217 n.1 (S.D. Ind. 1996) ("[I]t is clear that evidence of settlement discussions is 'not admissible to prove . . . [the] invalidity of [a] claim or its *amount*.'") (emphasis in original) (quoting Fed. R. Evid. 408).

controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.'" *McPhail*, 529 F.3d at 956 (citing *Cohn*, 281 F.3d at 840) (emphasis added); *see also Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 202 (D. Conn. 2004) ("A settlement offer should not necessarily be determinative of the amount in controversy. Instead, the Court agrees with those courts that have held that a settlement letter is only one factor to consider in assessing the amount in controversy and that courts must consider the context in which such a settlement demand was made.")

Applying this rationale, the Court does not view the settlement demand for an amount greater than $75,000 as a "reflect[ion of] a reasonable estimate" of plaintiff's potential recovery. *See McPhail*, 529 F.3d at 956. The express terms of the statute state that "[a]ny claim under this chapter . . . may recover or obtain . . . treble damages, or $1,500 per violation, whichever is greater, *payable to the consumer*." D.C. Code § 28-3905(k)(2)(A) (emphasis added); *see also Nat'l Consumers League*, 680 F. Supp. 2d at 139-40 (DCCPPA provides that damages in a private attorney general action are "payable to the consumer"). Plaintiff's complaint mirrors this requirement demanding damages for "Plaintiff and the General Public of the District of Columbia." (Compl. at Prayer for Relief.) Assuming NCL were to prevail at trial, it is the consumers who would be entitled to more than $75,000, not NCL. NCL would only be entitled to attorney's fees and any damages owed to it for products that it purchased. The Court therefore concludes that a settlement demand of more than $75,000 is not a reasonable calculation of the amount in controversy. Moreover, holding otherwise would effectively permit an unwarranted

end-around the non-aggregation principle and unduly discourage settlements in DCCPPA cases.[6]

IV. **CAFA**

In addition to defendant's argument that there is diversity jurisdiction, it also argues that removal is appropriate under two provisions of the Class Action Fairness Act. 28 U.S.C. § 1332(d). The first provision extends federal jurisdiction to class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," even where only minimal diversity exists. *Id.* at 1332(d)(2). The second extends federal jurisdiction to mass actions "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact. . . ." *Id.* at § 1332 (d)(11)(B)(i). As explained below, neither of these statutory provisions is applicable to this case.

A. **Class Action Jurisdiction**

Under CAFA's "class action" provision, federal courts have original jurisdiction over cases where minimal diversity is satisfied (that is, where at least one plaintiff is diverse from at least one defendant), the number of putative class members is greater than one hundred, and the total amount in controversy as to all plaintiffs is greater than $5 million. *Id.* at 1332(d)(2). Defendant argues that removal is appropriate on this basis because plaintiff filed its action "under a state statute authorizing an action to be brought by one or more representative persons as a class action," the total amount in controversy is greater than $5 million, and there is

---

[6] It is also not clear that NCL would be permitted to keep the total settlement amount if defendant accepted the offer. The statute does not expressly discuss the process for settling claims brought by private parties under § 28-3905(k), nor does it discuss whether settlement proceeds must be shared with consumers because the action is brought "on behalf" of the general public.

complete diversity. (Opp. at 11). Plaintiff responds that private attorney general actions are not class actions under the removal statute as they represent a "separate and distinct procedural vehicle from a class action." (Reply at 11 (citing *Breakman*, 545 F. Supp. 2d at 101).)

As the parties recognize, this is not the first time that a court within this jurisdiction has considered whether a DCCPPA private attorney general action is a "class action" under CAFA. In *Breakman*, Judge Bates concluded that because the plaintiff in that case "ha[d] not attempted to comply with Rule 23 of the D.C. Superior Court Rules of Civil Procedure, and he ha[d] not sought class certification," removal was not justified under CAFA's class action provision. 545 F. Supp. 2d at 101-02. Similarly, in *Zuckman*, Judge Bates relied on similar factors when he concluded that because plaintiff "brought his case as a representative action under the private attorney general provision of the DCCPPA, he did not refer to his claim as a class action, and did not seek to comply with any of the D.C. Superior Court's class action rules . . . his case does not qualify as a class action under the Class Action Fairness Act, and the Court cannot exercise jurisdiction pursuant to that statute." 958 F. Supp. 2d at 305.

Defendant attempts to distinguish *Breakman* and *Zuckman* based on the fact that those cases were brought by individuals, whereas the present case was brought by a non-profit, public interest organization. (Opp. at 12.) The difference, defendant argues, is that under D.C. Code § 28-3905(k)(1)(D), a "public interest organization" is only permitted to bring a DCCPPA action "on behalf of the interests of a consumer or a class of consumers . . . ." and "[b]ecause NCL brought this suit on behalf of 'the General Public'," defendant contends, "it must necessarily be bringing the suit on behalf of *a class of* consumers" under CAFA. (*Id.*) (emphasis in original.)

12

The Court disagrees with this analysis for two reasons. First, plaintiff's complaint expressly relies on all four private attorney general standing provisions, not just subsection (D).[7] (Compl. at ¶ 86 ("This Count is alleged against the Defendant on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1)(A)-(D).").) To be sure, defendant goes to great lengths in its opposition to explain why the other three subsections to 3905(k)(1) are not applicable to this case. However, whether these four standing provisions are applicable to the plaintiff's case is not at issue at this juncture. At the remand stage, the dispositive question—as defendant recognizes—is "how the action was actually filed." (Opp. at 13 (citing *Zuckman*, 958 F. Supp. 2d at 305).) Based on the complaint, there is no question that the action was "actually filed" based on all four standing provisions, including provisions which expressly permit non-class actions.

Second, even if the Court were to construe plaintiff's complaint as one brought solely pursuant to subsection (D), it would not follow that the statute's use of the term "class" would automatically permit removal under CAFA's class action provision. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B). The issue therefore would be whether an action under D.C. Code 28-3905(k)(1)(D) constitutes "a suit 'filed under' a state

---

[7] The other three subsections of D.C. Code § 28-3905(k)(1) provide for different bases for private attorney general standing. Subsection (A) allows "a consumer" to bring a private attorney general action. The statute defines a "consumer" as "a person . . . [who] does or would purchase . . . consumer goods or services" and includes in its definition of "person" "an organization." D.C. Code § 28-3901(a); 3905(k)(1)(A). Subsection (B) permits "an individual" to bring a private attorney general action "when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities . . . ." Subsection (C) permits "a nonprofit organization" to bring an action "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public." This is the only subsection that uses the phrase "on behalf of the general public."

13

statute or rule of judicial procedure 'similar' to Rule 23 that authorizes a class action." *Baumann v. Chase Inv. Servs. Corp.*, 2014 WL 983587, at *2 (9th Cir. Mar. 13, 2014) (quoting *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 214 (2d Cir. 2013)). Absent the "hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification," courts have held that private attorney general statutes "lack the equivalency to Rule 23 that CAFA demands." *Baumann*, 2014 WL 983587, at *4 (quoting *Purdue Pharma,* 704 F.3d at 216-17); *see also W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 175-76 (4th Cir. 2011). The same is true of D.C. Code § 28-3905(k)(1)(D). The Court therefore sees no reason to depart from the well-reasoned conclusion of Judge Bates in *Breakman* and *Zuckman* that removal is not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code § 28-3905(k)(1) where plaintiff has not brought a "class action" under D.C. Superior Court Rule 23.

B. **Mass Action Jurisdiction**

Defendant next argues that this Court has original jurisdiction under CAFA's "mass action" provision. 28 U.S.C. § 13332(d)(11)(B)(i). This provision provides for federal jurisdiction in "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." *Id.* At the time plaintiff's motion was filed, the federal courts of appeal were divided on whether actions brought on behalf of the public satisfied the "100 or more persons" requirement. However, the Supreme Court has recently resolved this debate holding that actions brought on behalf of the public, albeit in the context of *parens patriae* suits filed by states' attorneys general, do not satisfy the "100 or more persons" requirement of CAFA. *Mississippi ex rel. Hood*, 134 S.Ct. at 744. In that case, the Supreme Court reasoned that

14

"interpreting [the term] 'plaintiffs' in accordance with its usual meaning—to refer to the actual named parties who bring an action—leads to a straightforward, easy to administer rule under which a court would examine whether the plaintiffs have pleaded in good faith the requisite amount." *Id.* That holding is equally applicable here. NCL is the only named plaintiff and therefore defendant is precluded from removing the case under CAFA's mass action provision.

## CONCLUSION

Accordingly, the motion for remand will be granted. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 8, 2014